Efim Krentsel, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs December 5, 1983, to Judges ROGERS, MACPHAIL and BARRY, sitting as a panel of three.

*Joseph Berenholz,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, February 14, 1984:

Efim Krentsel (Claimant) has appealed from an order of the Unemployment Compensation Board of Review (Board) which found him ineligible for unemployment compensation benefits due to willful miscon-

duct. *See* Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

Claimant was employed by the Southeastern Pennsylvania Transportation Authority (SEPTA) as a disabled cashier when, on July 27, 1981, he was discharged for his failure to report to SEPTA's Medical Director for a physicial examination. As reflected by the referee's fact findings, the relevant history of this case dates back to November 22, 1980 when Claimant was assaulted and severely beaten by several youths while working for SEPTA as a trolley car operator. As a result of the attack, Claimant was absent from work until January, 1981 when he was assigned by SEPTA to lighter duties while continuing to receive workmen's compensation benefits for partial disability. On June 22, 1981, following approval by SEPTA's medical department, Claimant was returned to full-time duty as a disabled cashier working night shift. On or about July 21, 1981, Claimant contacted SEPTA's medical department and other SEPTA representatives requesting that he be assigned to a day-time shift. Claimant's request was prompted by the fact that he suffers from diabetes and high blood pressure and alleged that he was having difficulty working night hours due to his illness. The medical department interviewed Claimant and concluded, in a report dated July 24, 1981, that there were no medical grounds for altering Claimant's work schedule. Claimant also attended a meeting with his district superintendent on July 24 and again requested reassignment to day-time hours. The superintendent informed Claimant that he could not reschedule his hours and that since Claimant refused to work at night he must return to the medical department for further evalua-

tion on July 27, 1981 or be discharged. Claimant became verbally abusive at the meeting and indicated that he would not comply with the superintendent's order. The referee found, based on substantial record evidence, that Claimant failed to report to the medical department on July 27 and that his subsequent discharge was due to willful misconduct. The Board affirmed based on the referee's findings and the instant appeal followed.

The referee's findings, as summarized above, would appear to support the legal conclusion that Claimant's conduct constituted willful misconduct. An employee's refusal to comply with a reasonable order of his employer can constitute willful misconduct. *Kresge v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 78, 405 A.2d 1123 (1979). In order to avoid such a finding, Claimant must establish good cause for his actions. *Id.* When the actions of an employee are justifiable or reasonable under the circumstances, a finding of willful misconduct cannot stand. *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976).

In the instant case, Claimant contends that although he did not report directly to SEPTA's medical department on July 27, he was examined by another doctor on that day. Our review of the hearing transcript in this case has been hindered by the appearance of numerous "inaudibles" in the transcript and by the fact that Claimant, a recent Russian immigrant, was not represented by counsel at the referee's hearing and does not yet possess full command of the English language. We are able to glean from Claimant's testimony, however, that he was examined on July 27 by a Dr. Kodroff, who apparently was the

310

physician chosen by SEPTA to treat Claimant follow-
ing his assault in November, 1980.[1] Claimant testi-
fied that following the district superintendent's order
to be examined on July 27, Claimant went to Dr. Kod-
roff, rather than his family doctor, for an examina-
tion. In fact, the record does contain a note signed
by Dr. Kodroff and dated July 27, 1981.[2] The note
states as follows: "Patient under our care for Dia-
betes Mellitus. (Glucose today 400) For proper
management patient may *not* work at night." (Em-
phasis in original.)

Neither the referee nor the Board made any find-
ings regarding Dr. Kodroff's note or Claimant's tes-
timony concerning his medical examination on July
27. Since this evidence raises the issue of good cause
for Claimant's failure to report directly to SEPTA's
medical department, we conclude that a remand is in
order for further findings. When the issue of good
cause is raised, it must be addressed by the Board
before a finding of willful misconduct can be made.
*Hubbard v. Unemployment Compensation Board of
Review*, 72 Pa. Commonwealth Ct. 285, 289, 456 A.2d
1122, 1124 (1983). Where a separate finding on good
cause is not made, this Court will remand for further
proceedings. *Id.*

ORDER

The order of the Unemployment Compensation
Board of Review, Decision No. B-200912, dated No-
vember 4, 1981, is hereby vacated and the matter is
remanded for further proceedings consistent with the
foregoing opinion.

Jurisdiction relinquished.

---

[1] *See* N.T. at 9-11.

[2] The physician's note, marked as Exhibit 8, was admitted into
the record without objection by SEPTA.